# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH RAMOS,<br>    Plaintiff, | : | |
| | : | |
| v. | : | CIVL ACTION NO. 19-3816 |
| | : | |
| PRIME CARE MEDICAL, et al.,<br>    Defendants. | : | |

## MEMORANDUM

**JONES, J.**                                                                                  **DECEMBER 9, 2019**

Plaintiff Joseph Ramos, a prisoner incarcerated at SCI Phoenix, brings this *pro se* civil action pursuant to 42 U.S.C. § 1983 against medical staff and medical providers at Northampton County Prison, SCI Phoenix, and SCI Rockview. He seeks to proceed *in forma pauperis*. For the reasons that follow, the Court will grant Ramos leave to proceed *in forma pauperis*, dismiss with prejudice his Due Process claim, dismiss without prejudice his claims against Prime Care Medical, Correct Care Solutions, and individual Defendants Kenneth Wloczewski and "O'Neill," and permit him to proceed on an Eighth Amendment claim against the remaining individually-named Defendants.

## I.    FACTS

Ramos's Complaint raises Eighth Amendment and Due Process claims based on allegations that, on September 5, 2017, while playing handball at Northampton County Prison, he slipped and broke his foot and was subsequently denied proper medical care for this injury. He names as Defendants Prime Care Medical and the following employees of Prime Care Medical working at Northampton County Prison: Pauline Foley (nurse), Kenneth Wloczewski (doctor), and Jane Does 1 and 2 (nurses); Correct Care Solutions and the following employees of Correct Care Solutions working at SCI Phoenix: Dawn Albright (nurse), "Hanuschak" (doctor),

"O'Neill" (nurse), and John Doe (doctor); and the following medical personnel employed at SCI Rockview: Lisa Campbell (nurse), "Hans," Jamie Fick (nurse), Vernon Preston (doctor), and Jane Doe 3 (nurse). (ECF No. 1 at ¶¶ 3-16.) Ramos sued the individual defendants in their individual capacities, and sued Prime Care Medical and Correct Care Solutions in their official capacities. He seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

Ramos alleges that, while at Northampton County Prison, he injured his right foot and requested that Defendants John Doe and Jane Doe 1 call for medical attention for him, but that they did not do so. (*Id.* at ¶¶ 19, 22-23, 25-28.) On September 22, 2017, Ramos's foot was x-rayed, and on September 25, 2017, Defendant Foley informed Ramos that his foot was broken and that he would need to see an outside orthopedic doctor; she did not provide crutches or a protective boot. (*Id.* at ¶¶ 31-33.) On September 27, 2017, Ramos was transferred to SCI Graterford. (*Id.* at ¶ 35.) Ramos alleges that he was not examined to determine whether he was suitable for travel, that Sheriffs were not informed that his foot was broken, and that his medical records and x-ray were not forwarded to SCI Graterford. (*Id.* at ¶¶ 36-38.)

Upon arrival at SCI Graterford, Ramos advised Jane Doe 2 that he had fractured his right foot at Northampton County Prison. (*Id.* at ¶¶ 39-40.) Ramos was referred to Defendant Albright, who told him his records did not reflect a broken foot. (*Id.* at ¶¶ 41, 43.) Ramos's foot was again x-rayed; Defendant Hanuschak read the x-ray, determined that Ramos's foot was broken, and prescribed pain medication, but no crutches or protective boot. (*Id.* at ¶¶ 44-45.) On numerous occasions between September 27, 2017 and October 10, 2017, Ramos requested that Defendant Correct Care Solutions provide crutches and a protective boot, but neither were

immediately provided. (*Id.* at ¶¶ 47, 56.) On October 12, 2017, Ramos was transferred to SCI Rockview; he was not evaluated for suitability for travel before he left. (*Id.* at ¶¶ 48-49.)

Upon arrival at SCI Rockview, Ramos advised Defendant Jane Doe 2[1] that his right foot was broken and that he had been walking on it for eight weeks without any treatment. (*Id.* at ¶ 50.) Defendant Jane Doe 2 allegedly disregarded Ramos's statements and released him to the general population with no crutches or protective boot. (*Id.* at ¶ 51.) On October 15, 17, and 18, 2017, Ramos sent request slips for medical treatment and follow-up; Defendant Campbell responded that Ramos should sign up for sick call. (*Id.* at ¶ 52.) On October 31 and November 12, 2017, Ramos sent request slips to Defendant Fick asking whether SCI Rockview had obtained his records from Northampton County Prison, but Defendant Fick did not respond to the requests. (*Id.* at ¶ 53.)

In November 2017, Ramos was examined by an outside orthopedic specialist and another x-ray of his foot was taken. (*Id.* at ¶ 54.) The orthopedic specialist told Ramos to return in three weeks for follow-up, and stated that surgery would be required if his foot did not show signs of healing in that time. (*Id.* at ¶ 55.) On November 22, 2017, an x-ray of Ramos's foot was taken in the SCI Rockview medical department. (*Id.* at ¶ 57.) Ramos advised Defendant Hans that his discharge from the outside orthopedic specialist specified a return to that doctor for follow-up and requested that Hans review the discharge summary. (*Id.* at ¶ 58.)

On November 28, 2017, Ramos sent a request slip inquiring about his three-week follow-up with the outside orthopedic specialist; on December 8, 2017, Defendant Preston responded that Ramos would be seen by a PA. (*Id.* at ¶¶ 59-60.) On December 12, 2017, Ramos sent a

---

[1] Ramos identified two, likely different individuals as "Jane Doe 2," an intake nurse at SCI Graterford, and an intake nurse at SCI Rockview. (ECF No. 1 at ¶¶ 40, 50.) It is unlikely, albeit not impossible, that the same individual performed intake at both correctional facilities.

request slip complaining that his foot was not healing, that he was in pain, and that he had not been sent for follow-up care; Defendant Campbell responded that Ramos did not need surgery and should sign up for sick call to be re-evaluated. (*Id.* at ¶¶ 61-62.) On December 18, 2017, Ramos sent a request slip complaining that his foot was not healing, that he was in pain, was still on crutches[2], and that he needed surgery; he received no response. (*Id.* at ¶ 63.)

On January 5, 2018, Ramos was seen by Defendant Hans and told he would be scheduled for a final exam and x-ray; this never took place, despite two further requests by Ramos. (*Id.* at ¶¶ 64-66.) Ramos alleges he is still in pain, has difficulty walking, has never been re-examined, and has never been provided with physical therapy. (*Id.* at ¶¶ 67-69.)

## II. STANDARD OF REVIEW

The Court will grant Ramos leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). As Ramos is proceeding *pro se*, the Court must construe his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

---

[2] It is unclear from the Complaint's recitation of facts when Ramos was provided with crutches or by whom.

[3] However, as Ramos is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

## III. DISCUSSION

### A. Due Process Claim

Ramos's Fourteenth Amendment Due Process claim against Defendants is foreclosed by Supreme Court precedent. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing [a plaintiff's] claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

Here, Ramos's Eighth Amendment claims rest, in part, on the alleged failure of the Defendants to, *inter alia*: (1) evaluate his condition before transfer, (2) transfer medical records and x-rays from one institution to another, and (3) document Ramos's condition in his medical records. (ECF No. 1 at ¶¶ 71-72, 76, 78.) He contends that this conduct constituted deliberate indifference to his serious medical condition. (*Id.*) His Due Process claim rests on the alleged failure of the Defendants to act in accordance with prison policies and procedures governing "evaluation of Ramos to be transferred; transferring medical records and x-rays to the forwarding prison, and documenting in the medical records Ramos's injuries." (*Id.* at ¶ 83.) In short, both claims are based on the same alleged conduct. "'Because the Eighth Amendment provides an explicit source of protection for deliberate indifference to serious medical needs, Plaintiff's claim is preempted by the Eighth Amendment and should not be analyzed as a substantive due process claim under the Fourteenth Amendment.'" *McAnulty v. Mooney*, Civ. A. No. 13-3104, 2016 WL 4245558, at *4 (M.D. Pa. Aug. 11, 2016) (quoting *Sadelmyer v. Peltzer*, Civ. A. No. 12-1785, 2013 WL 4766517, at *6 (W.D. Pa. Sept. 4, 2013)). Because the gravamen of Ramos's claim is that the deliberate indifference of the Defendants to his serious medical needs violated his Eighth

Amendment rights, his claim is properly analyzed under that amendment, rather than the Due Process Clause. Accordingly, Ramos's Due Process claim is dismissed with prejudice.

> B. **Official Capacity Claims Against Prime Care Medical and Correct Care Solutions**

Ramos purports to state official capacity claims against Prime Care Medical, which provided medical services to Northampton County Prison, (ECF No. 1 at ¶ 3), and Correct Care Solutions, which "contracted with SCI Graterford to provide medical care to the prisoners at SCI Graterford." (*Id.* at ¶ 12.) "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The Third Circuit Court of Appeals has held that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003)). Rather, in order to hold a private health care company like Prime Care Medical liable for a constitutional violation under § 1983, Ramos must allege the provider had "a relevant [] policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d at 584 (citing *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia*, Civ. A. No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs.") (internal quotation marks omitted). A plaintiff "must identify [the] custom or policy, and specify

what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York, Pennsylvania*, 564 F.3d 636, 658 (3d Cir. 2009).

Here, Ramos has not identified any policy or custom of Prime Care Medical or Correct Care Solutions that caused him to be deprived of proper care for his broken foot. His allegations that he advised personnel that his foot was broken, that his injury was diagnosed, that he was denied treatment that he considered acceptable, and that he was transferred between prisons without appropriate evaluation and without his relevant medical records, do not plausibly establish the existence of a policy or custom adopted by Prime Care Medical or Correct Care Solutions that would give rise to a claim against either entity. Accordingly, Ramos has not stated a claim against Prime Care Medical or Correct Care Solutions and the claims against these providers must be dismissed. However, because the Court cannot say at this time that Ramos could never state a plausible claim based on a policy or custom, the claims will be dismissed without prejudice, and Ramos will be granted leave to file an amended complaint to the extent he wishes to address the defects discussed above.

### C. Claims Against the Individual Defendants

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[4] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

---

[4] The Complaint indicates that Ramos is a convicted and sentenced prisoner, (ECF No. 1 at ¶ 2), so the Eighth Amendment governs his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

7

*Farner*, 511 U.S. at 837. "A medical need is serious . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation marks omitted).

Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Here, individual Defendants Foley, Albright, Hanuschak, Campbell, Hans, Fick, and Preston are alleged to have had health care training, were advised of Ramos's injury and his desire for treatment, and were all in a position to take action related to his treatment. Ramos has alleged facts suggesting that these Defendants observed, examined, or otherwise became aware of his broken foot, and either did not provide medical treatment or did not provide the treatment that Ramos alleges was required. Liberally construing the Complaint and taking all inferences as true as the Court is obligated to do at this stage of the litigation, Ramos has alleged a plausible claim for purposes of § 1915 screening.

The recitation of facts in the Complaint, however, does not include any allegations as to when or how Defendants Wloczewski or O'Neill were personally involved in the alleged

8

violation of Ramos's Eighth Amendment rights. *See Rode*, 845 F.2d at 1207. Accordingly, the claims against these Defendants will also be dismissed without prejudice and with leave granted to Ramos to file an amended complaint.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Ramos leave to proceed *in forma pauperis*, dismiss with prejudice his Due Process claim, dismiss without prejudice his claims against Prime Care Medical, Correct Care Solutions, and individual Defendants Wloczewski and O'Neill, and permit him to proceed on his claims against the remaining Defendants at this time. The Court will allow Ramos to file an amended complaint in the event he can state a plausible claim against Prime Care Medical, Correct Care Solutions, Wloczewski, or O'Neill. If Ramos chooses not to file an amended complaint, the Court will direct service on Defendants Foley, Albright, Hanuschak, Campbell, Hans, Fick, and Preston only. An appropriate Order follows.

**BY THE COURT:**

*/s/ C. Darnell Jones, II*
**C. Darnell Jones, II   J.**